UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PROJECT PRODUCERS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>KIM LAMONT OWENS,<br><br>    Defendant. | Case No. 23-10056<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS [5]**

In May 2003, Kim Lamont Owens, a Grammy-nominated recording artist, and Project Producers, LLC entered into a written management agreement. The contract contained an "evergreen" clause whereby it automatically renewed for one-year periods unless one of the parties terminated the agreement in writing. In April 2005, Owens sent a notice of termination in writing, but Project Producers says he immediately rescinded the termination and the parties continued under the terms of the written contract until Owens first breached it in 2014. Project Producers says that Owens reduced its commission, violated the contract's exclusivity provision, and improperly terminated the contract verbally in October 2016.

Nearly six years later—on October 17, 2022—Project Producers filed suit in Oakland County Circuit Court for breach of contract, unjust enrichment, quantum meruit, promissory estoppel, breach of oral contract, and an accounting. (ECF No. 1-

1, PageID.16–19.) Owens removed to this Court based on diversity of citizenship. (*See* ECF No. 1.)

Soon after, Owens moved to dismiss, arguing, among other things, that Project Producers' breach of contract claims are time-barred, and its quasi-contract claims are duplicative. (ECF No. 5, PageID.55.) For the reasons that follow, the Court will grant Owens' motion in part.

## I. Background

Because Owens seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in Project Producers complaint as true and draws all reasonable inferences from those allegations in its favor. *See Waskul v. Washtenaw Cnty. v. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

Project Producers, LLC, is a Michigan Limited Liability Company, managed by Toya Hankins. (ECF No. 1-1, PageID.11–12.) Kim Lamont Owens is a four-time Grammy-nominated international recording artist. (*Id.*) On May 31, 2003, Hawkins, through Project Producers, entered a written management contract with Owens to act as Owens' exclusive personal manger and consultant in exchange for a 20 percent commission (of his gross earnings). (ECF No. 6-2, PageID.97–98.) The agreement provides that it shall continue for an "initial term" of two years from the date of execution and "shall be renewed for one (1) year periods (hereinafter "renewal period(s)") automatically unless either party shall give written notice of termination to the other not later than thirty (30) days prior to the expiration of the initial term or the then current renewal period." (*Id.* at PageID.97.) The agreement also contained

a "sunset provision" stating that, in the event of termination, Project Producers was to be paid two years of post-term commissions, at a reduced rate of 10 percent for year one and seven percent for year two. (*Id.* at PageID.100.)

On April 29, 2005, 30 days before the end of the initial two-year term of the contract, Owens' attorney sent a letter to Toya Hankins, which stated "this letter shall serve as notice to you that [Owens] does not intend to renew the agreement upon the terms and conditions set forth. However, he would like to commence negotiations in hopes that you and he can agree on terms and conditions for a new agreement." (ECF No. 6-3, PageID.107.) Project Producers acknowledges in its complaint that this letter constituted notice of intent to terminate the agreement but says that "an immediate discussion ensued in which [Owens] withdrew and rescinded his termination of the management agreement, and the written agreement was revived and honored. Henceforth the parties resumed operation under the terms of the original contract with payments continuing as normal." (ECF No. 1-1, PageID.14.)

According to Project Producers, the parties then continued under the terms of the written agreement without issue until January 2014 when Owens "withheld payments owed to Toya Hankins in her representative capacity to forcefully lower her commission from 20% to 15%." (*Id.*) Hankins refused the lowered commission rate until around November 2014, when she accepted the new rate "under duress" due to her mother's deteriorating health condition. (*Id.*) In an email to Owens in 2014, Hankins stated: "[t]he pay stoppage that was imposed on me without warning, has compromised every aspect of my life and the lives of my team and the people for whom

3

I am a care giver and provide support toward their well being. This unexpected decision did not allow me an opportunity to plan for not receiving regularly anticipated income for nearly 8 months." (ECF No. 9-4, PageID.160.)

Project Producers also says Owens "attempted to discuss additional management being added at the cost of [Project Producers'] compensation" in 2015 but Hankins rejected such an arrangement. (ECF No. 1-1, PageID.14.) Nonetheless, Owens "proceeded to enter several management agreements anyway, breaching the terms of the written contract's exclusivity provision." (*Id.*) Owens also allegedly booked a publishing agreement with "Kobalt Music" and "a collaboration with a well-known recording artist" without the consent or knowledge of Project Producers and failed to compensate Project Producers for those bookings. (*Id.* at PageID.15.)

On October 14, 2016, Owens "contacted Hankins and informed her verbally . . . that he wished to dissolve the business relationship." (*Id.*) But, says Project Producers, "no written notice of termination was provided in October 2016 . . . . As such, the contract of May 31, 2005, as set forth and operated under by both [Project Producers and Owens], is still in effect." (*Id.* at PageID.15–16.) Owens emailed Hankins on October 31, 2016, stating that "[she] should expect full commission on all performance dates that were confirmed prior to [October 14, 2016]" and requesting "[her] assistance in overseeing any performance dates that were confirmed under [her] purview until the end of 2016." (ECF No. 9-3, PageID.158.) In November 2016, Hankins "rejected a settlement offer [from Owens] to adjust the sunset provision to 1% [commission] for one year." (ECF No. 1-1, PageID.15.)

4

Project Producers also says that after October 14, 2016, Owens failed (and continues to fail) to pay commissions owed under the contract and to abide by the terms of the contract's exclusivity provision. (*Id.*) Project Producers does not, however, appear to allege that it continued to provide managerial services to Owens after October 14, 2016.

From these factual allegations, Owens believes that Project Producers' October 17, 2022 lawsuit comes too late and thus, should be dismissed before it begins.

## II. Legal Standard

In deciding this motion to dismiss, the Court "construes the complaint in the light most favorable" to Project Producers and determines whether the "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Determining what is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. Breach of Contract

Project Producers says that Owens breached the parties' written contract, or in the alternative an oral contract with the same terms, by: (1) reducing Project

5

Producers' commission from 20 percent to 15 percent (by duress) in January or November of 2014; (2) violating the exclusivity provision and entering into management agreements with other managers in 2015 and after October of 2016; and (3) failing to pay revenue and commissions owed to Project Producers, including commissions owed pursuant to the sunset clause.

Owens argues that Project Producers' breach of written and oral contract claims are time-barred as the "entire breach of contract claim is premised upon the non-payment of commissions for services rendered prior to October 14, 2016, i.e., claims that accrued more than six years prior to the filing of the Complaint [on October 17, 2022]." (ECF No. 5, PageID.64.) Owens also argues that the sunset clause is unenforceable in an oral agreement by operation of the statute of frauds, and thus the breach of contract claims premised on post-termination commissions owed could not make Project Producers' breach of contract claims timely.

The Court will take these arguments in turn. First some law. Owens asks the Court to apply Michigan law (ECF No. 5, PageID.63) and Project Producers does not disagree.[1]

The parties acknowledge that the statute of limitations for oral or written breach of contract claims in Michigan is six years. Mich. Comp. Laws § 600.5807(8).

---

[1] Furthermore, the 2003 agreement provides that it "shall be subject to and construed in accordance with the laws of . . . Michigan." (ECF No. 6-2, PageID.105.) And, in any event, a federal court sitting in diversity must apply the forum state's choice of law rules—in Michigan, "statute of limitations questions are considered procedural and are governed by the law of the forum." *Czewski v. KVH Indus., Inc.*, 607 F. App'x 478, 480 (6th Cir. 2015) (internal quotation and citations omitted).

A breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when the damage results." Mich. Comp. Laws § 600.5827. Put another way, the statute of limitations begins to run on the date the contract is breached or "when suit may be brought." *Am. Fed'n of State, Cnty. & Mun. Emps., v. Highland Park Sch. Dist. Bd. of Educ.*, 577 N.W.2d 79, 85 (Mich. 1998); *see also Future Now Enters., Inc. v. Foster*, 860 F. Supp. 2d 420, 430 (E.D. Mich. 2012), *aff'd*, 525 F. App'x 395 (6th Cir. 2013). Thus, Project Producers' complaint, filed on October 17, 2022, is timely only with respect to breaches that occurred within the six years that preceded the date of filing, that is, breaches that occurred as early as October 16, 2016.[2]

Now to the contract at issue. The parties dispute whether the 2003 written contract was terminated by Owens in 2005. While Owens clearly sent a letter expressing an intent to terminate the 2003 agreement in April 2005, Project Producers alleges he immediately rescinded the written termination in a follow-up conversation and the parties continued to operate pursuant to the terms of the written contract—a contract that then automatically renewed in May of each year. Project Producers also says that both parties continued to perform under the written contract—albeit with a few breaches by Owens—until Owens tried to verbally terminate the business relationship on October 14, 2016.

---

[2] While Project Producers' complaint was docketed with the state court on October 17, 2022, it was initially filed with the state court on October 14, 2022, but rejected due to a filing error. (ECF No. 9-2, PageID.155.)

7

Owens has a different version. He contends that he never rescinded his 2005 termination of the written contract, and, instead, the parties' business relationship was conducted pursuant to an oral management agreement (with different terms than the 2003 contract) from May 2005 through October 2016.

But taking the factual allegations in the complaint as true and drawing all reasonable inferences in favor of Project Producers, the Court must assume for purposes of this motion that Owens rescinded his April 2005 termination of the contract and the written contract continued to govern the parties' business relationship until at least May 2017—the end of the last yearly renewal period after Owens' October 2016 termination.

Owens resists this conclusion by arguing that even if he had verbally rescinded his termination notice, such a rescission would be invalid since the 2003 contract has a provision that requires all modifications or amendments to be in writing. This argument fails to persuade.

Owens fails to explain how retraction of his April 2005 notice of termination would be deemed a modification of or amendment to the 2003 contract. Indeed, it did not alter or change the terms of the contract. *See Modification*, Black's Law Dictionary (11 ed. 2019) (defining modification as "a change to something; an alteration or amendment <contract modification>"); *see generally Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003) ("The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative

8

conduct establishing mutual agreement *to waive the terms of the original contract*.") (emphasis added). And while Owens faults Project Producers for not providing case law to support its argument that termination could be rescinded orally (ECF No. 11, PageID.177), Owens fails to provide any case law indicating that such a rescission would be a modification or alteration of the original contract.

Additionally, even assuming Owens is correct that rescinding a decision to terminate a contract is a modification of the contract, the parties could mutually agree to waive the requirement that it be done in writing. *See Quality Prod.,* 666 N.W.2d at 257 ("[C]ontracting parties are at liberty to design their own guidelines for modification or waiver of the rights and duties established by the contract, but even despite such provisions, a modification or waiver can be established by clear and convincing evidence that the parties mutually agreed to a modification or waiver of the contract."). Here, Project Producers provides compelling factual allegations that the parties agreed to Owens' rescission of his termination of the contract. After 2005, the parties continued their management relationship per the terms of the written contract, with Owens paying 20 percent commission to Project Producers for at least nine years. Owens also sought permission from Project Producers to hire other managers in 2015, something required by the exclusivity agreement. And Owens attempted to negotiate a lower post-term commission payment in November of 2016—yet another term of the 2003 contract. On these facts, and at this stage in the litigation, the Court cannot say the oral rescission of the termination letter was invalid.

9

With this legal and factual backdrop, the Court now considers whether Project Producers' breach of contract claims are timely. Even assuming Owens' October 14, 2016, verbal termination was valid, such a notice would have terminated the renewal of the contract for the subsequent period—it would not have terminated the contract for the remaining months of the then-current renewal period.[3] This is evident from the terms of the contract, which state that it "shall be renewed for one (1) year periods (hereinafter "renewal period(s)") automatically unless either party shall give written notice of termination to the other not later than thirty (30) days prior to the expiration of the initial term or the then current renewal period." (ECF No. 6-2, PageID.97.) So the parties were bound by the contract for the duration of the yearly renewal periods and could only terminate the contract at the expiration of a renewal period. Accordingly, Project Producers' complaint, filed on October 17, 2022, is timely with respect to breaches that allegedly occurred from October 16, 2016, through the end of the renewal period—that is, breaches that would have occurred no more than six years prior to the date of filing. This date range includes Owens' alleged failure to pay revenue and commissions at the rates set forth in the contract from October 16,

---

[3] Project Producers says that Owens' October 2016 verbal termination notice was not a valid termination under the contract because it was not in writing—and since Owens has not provided written notice of termination, the contract has continued to renew annually pursuant to the automatic renewal or "evergreen" clause. But the Court need not resolve this issue at this early stage in the litigation since it finds that Project Producers timely stated a claim for breach of contract even assuming the October 2016 termination was valid.

10

2016, to May 30, 2017, and Owens' violations of the exclusivity provision of the contract during this time period.[4]

Additionally, the sunset provision of the written contract required Owens to pay Project Producers 10 percent commission in the year after termination and seven percent commission in the second year after termination. (ECF No. 6-2, PageID.100.) Assuming Owens terminated the contract in October 2016, and the renewal period expired on May 30, 2017, Project Producers would have been entitled to its 10 percent commission on Owens' earnings from May 30, 2017, through May 30, 2018, and seven precent commission on Owens' earnings from May 30, 2018, through May 30, 2019. Thus, claims against Owens for failure to pay these post-term commissions under the sunset provision of the written contract would not be time-barred as they accrued within six years of the filing of this suit on October 17, 2022.[5]

There are, however, a few contract claims that are untimely because, according to the allegations in the complaint, they occurred before October 16, 2016. More

---

[4] For the same reasons, such allegations are also timely as to Project Producers' alternatively pled breach of oral contract claim.

[5] Owens argues that the statute of frauds would preclude the enforcement of the sunset provision as an oral agreement since it could not be performed within one year of its making. Without the breach of the sunset provision, Owens says all of the other breach of contract claims occurred prior to October 16, 2016, and would be time-barred. But the Court need not resolve the statue of frauds issue here. For one, at this stage in the litigation, the Court must accept as true the allegation that Owens rescinded his termination of the written contract, and the written contract governed the parties' relationship. If the written contract governed, then there is no statute of frauds issue. For two, the Court found that Project Producers adequately and timely pled a breach of contract claim based on commissions owed during the renewal period and for violations of the exclusivity provision—neither of which implicate the statute of frauds.

11

specifically, Project Producers' claims that Owens breached the contract by reducing the commission rate in January or November 2015 and by violating the contract's exclusivity provision in 2015, are both barred by the six-year limitations period.

In sum, Project Producers timely stated a claim for breach of contract, written or oral, premised on alleged breaches that occurred after October 16, 2016. Thus, except for the two untimely claims noted above, Project Producers' claims for breach of contract (Count I and V) will not be dismissed.

### IV. Quasi-Contract Claims

Next, Owens argues that Project Producers' claims for unjust enrichment, promissory estoppel, and quantum meruit are duplicative of the breach of contract claims and are also time barred. Project Producers responds that these claims are adequately pled in the alternative.

Unjust enrichment, promissory estoppel, and quantum meruit are equitable remedies, and the Court recognizes that Project Producers "cannot recover on an equitable theory when an express contract governs the parties' relationship and the express contract's terms cover the same interactions from which a party is seeking relief on an equitable claim." *Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 871 (E.D. Mich. 2013). But "alternatively pleading an express contract and implied contract (whether styled as unjust enrichment or quantum meruit) is allowed when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 793 (E.D. Mich. 2014) (citing *Cascade Elec. Co. v. Rice*, 245 N.W.2d 774, 777 (Mich. Ct.

App. 1976)); *see also Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 924 (6th Cir. 2008) (finding that unjust enrichment claim could proceed where termination of express contract meant that contract implied-in-law would not cover same subject matter as express contract).

Here, however, the parties are not disputing the existence of an express contract governing their management relationship. Instead, they are disputing its scope, terms, and form (oral or written). While Owens challenges the existence of the express written contract beyond 2005, he concedes that Project Producers "rendered managerial services to [Owens] pursuant to an oral agreement until October 14, 2016." (ECF No. 5, PageID.55, 57–58.) And while Project Producers says the 2003 written contract governed the parties' relationship, it argues in the alternative that an oral contract with the same terms governed the relationship. Thus, there is no basis for the implied contract claims. *Compare Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993), *aff'd,* 47 F.3d 1167 (6th Cir. 1995) ("If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract. In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract.") *with Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996) (allowing plaintiff to proceed under unjust enrichment theory in the alternative to breach of contract claim where defendant "kept its options open, and may deny the existence of a contract on remand

13

to the district court") *and Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (same).

Accordingly, Project Producers' claims for unjust enrichment (Count II), quantum meruit (Count III), and promissory estoppel (Count IV) are dismissed.

## V. Accounting

At the end of the complaint, Project Producers adds a claim for accounting and an order compelling access to books and records. (ECF No. 1-1, PageID.19.) Project Produces alleges that the parties' written contract gave it the right to a monthly accounting upon receipt of all funds. (*Id.* at PageID.20.) But the failure to obtain this monthly accounting is not part of Project Producer's breach of contract claim. Instead, Plaintiff seeks it as an equitable remedy. (*Id.*)

Owens argues, however, that Project Producers failed to state a viable claim because "in Michigan the law is clear that an accounting may not be had where an action is for a specific sum due under a contract." (ECF No. 5, PageID.72–73 (quoting *Sower v. Change Home Fin., L.L.C.*, No. 13-15274, 2016 WL 4446589, at *6 (E.D. Mich. Aug. 24, 2016)).) The Court agrees.

An accounting is "an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th. Cir. 1972). "The burden of proof is on plaintiff to show the inadequacy of the legal remedy," and "Michigan courts have long held that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue." *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999). Project

14

Producer's bare allegation that it is without an adequate legal remedy (ECF No.1-1, PageID.20) is inadequate. Further, "[t]he law is clear that an accounting may not be had where the action is for a specific sum due under a contract." *Sower*, 2016 WL 4446589, at *6 (quoting *Brown v. Brodsky*, 81 N.W.2d 363, 366 (Mich. 1957)); *see also Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010) ("An accounting is not available where the action is for [a] specific amount due under the contract."); *West v. Wells Fargo Bank, N.A.*, No. 12–13572, 2013 WL 3213269, at *6 (E.D. Mich. June 26, 2013) ("[A]n accounting is an extraordinary, equitable remedy that is not permitted when a remedy at law is available and, moreover, is inappropriate in cases regarding amounts due under a contract, such as a note or mortgage."). Additionally, Project Producers can obtain the pertinent accounting information it seeks through discovery on its breach of contract claims.

So the Court finds that an equitable accounting remedy is inappropriate here and Count VI will be dismissed.

## VI. Conclusion

For the reasons explained, Owens' motion to dismiss is granted in part and denied in part. Project Producers' claims for breach of contract (Count I and V) survive, but its claims for unjust enrichment (Count II), quantum meruit (Count III), promissory estoppel (Count IV), and accounting (Count VI) are DISMISSED.

SO ORDERED.

Dated:  September 29, 2023

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE